UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAEL TOVAR CARRANZA, | No. C 07-1114 MHP (PR) |
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| JAMES A. YATES, Warden, | |
| Respondent. | |

## INTRODUCTION

Ismael Tovar Carranza filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition asserting a due process violation based on the 28-year gap between the shooting and the criminal prosecution therefor. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A. <u>The Crimes And Case History</u>

The district attorney filed an information in Contra Costa County Superior Court on February 27, 2004, charging Carranza with the 1975 murder of Rosemary Carranza and attempted murder of Linda Gutierrez, and alleging that he used a firearm in the offenses. The evidence of the crimes was described in the California Court of Appeal's opinion, and is only briefly summarized here because the details generally are not relevant to the legal question presented. See Resp. Ex. 5, California Court of Appeal Opinion ("Cal. Ct. App. Opinion"), at 2-4.

Carranza and his wife, Rosemary Carranza, were involved in divorce proceedings in 1975. A week before the shooting at issue here, the family court awarded custody of their two daughters and one son to Rosemary. Carranza reacted angrily to the family court's ruling. That weekend, he picked up his son for visitation, but did not return him to Rosemary the following week.

On the evening of August 31, 1975, Rosemary and her sisters, Linda Gutierrez and Christine Rowell, went out for the evening together and stopped for breakfast at Joe's Patio Restaurant at about 1:00 a.m. During this time, Carranza with his young son went looking for Rosemary, but did not find her at several locations he checked. He went to Joe's Patio to get some coffee at about 1:00 a.m.

Hector Martinez, a friend of Rosemary's brother, saw a Hispanic man peer through the window at the restaurant. That man, Carranza, entered the restaurant a few minutes later. Linda, who had just emerged from the bar area, made eye contact with Carranza as he entered the restaurant. Carranza shot her. Linda heard more shooting and saw Carranza shoot Rosemary four to five times. Rosemary died at the scene. A bystander, Gustavo Marquez, also was shot. Christine emerged from the bar area and screamed at Carranza. She tried to run after him but Hector Martinez restrained her. Carranza drove away in a truck.

En route to the hospital, "the ambulance driver heard Linda say, 'my brother-in-law did it.' The shooting left Linda paralyzed, confined to a wheelchair, and without the use of her kidneys or control of her bowels. Christine, Linda, and their mother did not see or hear from [Carranza] or his son from the night of the shooting until his trial in 2004." Id. at 3.

Carranza testified at trial that "he did not shoot anyone that night. He said he went to the restaurant and saw Rosemary dancing, but claimed that he saw people who 'had knives in their hands, and they were going to come at me,' so he quickly left." Id.

Following the jury trial, Carranza was convicted of first-degree murder and attempted murder, and was found to have used a firearm in the offenses. He was sentenced to state prison for life with the possibility of parole, plus five years for the firearm enhancement. The Court of Appeal affirmed the conviction with a sentence modification. The California

Supreme Court denied review.

Carranza then filed this action. In his federal habeas petition, Carranza claimed that his right to a speedy trial was violated by the delay of nearly 28 years in bringing him to trial. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer. Carranza filed a traverse. Carranza later obtained a stay of this action so that he could exhaust state court remedies as to some additional claims, but later decided to abandon those claims.

B.   Delayed Prosecution Facts

On September 2, 1975 – the day after the shooting -- the Contra Costa County District Attorney filed a felony complaint charging Carranza with the murder of Rosemary Carranza and assault on Linda Gutierrez with a deadly weapon, and alleging that he used a firearm in the offenses. A warrant for Carranza's arrest was issued the same day.

Carranza testified that he left Contra Costa County on the night of the shooting "with his son and went to a labor camp near Stockton, where he worked for a month or so before traveling to Mexico in September or October of 1975." Cal. Ct. App. Opinion at 3-4. He testified that he did not learn of his wife's death until a month or two after he went to Mexico, when he received a letter from her grandmother.

Carranza did not return to California until 1981. "During the early 1980's, [Carranza] went back and forth between the United States and Mexico, eventually settling in Dallas, Texas in 1984." Id. at 4. Carranza had brief visits to California: he went to Turlock, California for two weeks in 1981 to look for work, and was in Oxnard, California for two or three weeks in 1982, and was in California for a day in 1986 to attempt to close his son's bank account. Carranza settled in Dallas, Texas in 1984. While living in Dallas, Carranza purchased a home, obtained a driver's license, and held a job under his own name with the City of Dallas. On a tip from his cousin in Mexico, Carranza was arrested in Dallas on June 6, 2003, and was extradited to California in December 2003.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Contra Costa County, California, within this judicial district. 18 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C § 2254(b), (c). The parties do not dispute that the state judicial remedies were exhausted for the claim in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's

4

decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

A. Background

The basic timeline of activities in the criminal justice system was this:

| | |
|---|---|
| September 1975 | shooting |
| September 1975 | felony *complaint* filed and arrest warrant issued |
| October 2002 | tip received about Carranza's whereabouts |
| December 2002 | FBI obtains an unlawful-flight-to-avoid-prosecution warrant |
| June 2003 | Carranza arrested in Dallas |
| December 2003 | Carranza extradited to California |
| February 2004 | felony *information* filed |
| August 2004 | trial |

Carranza complained in state court of the 28-year delay between the filing of the felony complaint in 1975 and his trial in 2004. The California Court of Appeal rejected the federal constitutional speedy trial claim. That court determined that the speedy trial period started with the filing of the felony information in 2004, rather than with the issuance of the criminal complaint and arrest warrant in 1975. Cal. Ct. App. Opinion at 5-6. The state appellate court applied a California Supreme Court case that had "held that, under California law, federal constitutional rights do not attach merely upon the filing of a felony complaint" because a felony complaint in California "is not a 'formal accusation upon which a defendant may be brought to trial in the court with jurisdiction over prosecution of the offenses alleged.'" Cal. Ct. App. Opinion, pp. 5-6 (quoting People v. Martinez, 22 Cal. 4th 750, 764

(Cal. 2000)). "[A]s only a felony complaint was filed against [Carranza] in 1975, we cannot recognize a claim under the federal constitutional right to a speedy trial." Id. at 6. The state appellate court did not discuss any federal due process right.

The state appellate court then went on to determine that the delay also did not violate Carranza's state statutory speedy trial right or his state constitutional speedy trial right. The state statutory right was not implicated because Carranza was never bound over for trial after a preliminary hearing by a magistrate – an event that had to take place for the statutory right to attach. See id. at 7. The state constitutional speedy trial right was broader than the state statutory right, but the defendant nonetheless had to affirmatively demonstrate the delay prejudiced his ability to defend against the charges and, if actual prejudice was shown, the court had to weigh the prejudicial effect of the delay against any justification for the delay. See id. Here, Carranza failed to show actual prejudice. See id. at 8-9.

B.  Sixth Amendment Speedy Trial Claim

The threshold task is to determine whether this is in fact a speedy trial situation, because not all delayed prosecutions involve the Sixth Amendment right to a speedy trial – some delayed prosecution claims are covered by the Due Process Clause. The constitutional source (if any) for the claimed right affects the test to be applied.

The Supreme Court has determined that the Sixth Amendment guarantee of a speedy trial does not apply until there has been a "formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." U.S. v. Marion, 404 U.S. 307, 320 (1971). "[A]s far as the Speedy Trial Clause of the Sixth Amendment is concerned, [pre-indictment] delay is wholly irrelevant." United States v. Lovasco, 431 U.S. 783, 788 (1977). Lower courts – even within this circuit -- are divided as to whether the mere filing of the complaint starts the constitutional speedy trial time period. Compare United States v. Terrack, 515 F.2d 558, 559 (9th Cir. 1975) (quoting Northern v. United States, 455 F.2d 427, 429 (9th Cir. 1972)) ("the filing of a criminal complaint, or the indictment where there is no complaint, marks the inception of the speedy trial guarantee of the Sixth Amendment") with Arnold v. McCarthy, 566 F.2d 1377, 1382 (9th Cir. 1978)

6

(defendant was not "accused" within the meaning of the Sixth Amendment prior to the indictment, even though a criminal complaint had been filed and defendant had been in state custody), and <u>Favors v. Eyman</u>, 466 F.2d 1325, 1327-28 (9th Cir. 1972) (the rationale of <u>Marion</u> "requires that we hold that Favors' Sixth Amendment right to a speedy trial did not attach when the complaint was filed").

The California Court of Appeal's rejection of the speedy trial claim was not contrary to, or an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court. If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. <u>See generally</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77 (2006). In light of both the absence of controlling Supreme Court authority and the split among lower courts as to whether the filing of the criminal complaint triggered the Sixth Amendment speedy trial right, it cannot be said that the California Court of Appeal unreasonably applied or acted contrary to clearly established federal law when it determined that the issuance of a criminal complaint and arrest warrant in 1975 did not start the Sixth Amendment speedy trial clock. Similarly, it was reasonable for the state appellate court to determine that the Sixth Amendment speedy trial clock did not start until the filing of the information in 2004 in light of <u>People v. Martinez</u>, 22 Cal. 4th 750, 763-65 (Cal. 2000), which had applied <u>Marion</u> to the particular way California's criminal prosecution system worked and concluded that the Sixth Amendment speedy trial right did not attach on the filing of a felony complaint or issuance of an arrest warrant, but only on the filing of a felony information.

Carranza's argument focused on the 28-year delay after the shooting, and not on the small delays in the 14 months between his arrest and his trial. Those small delays would not suffice to show a speedy trial violation, however, because he caused most of the delay and waived some of the delay for speedy trial purposes. <u>See</u> <u>Vermont v. Brillon</u>, 129 S. Ct. 1283, 1290 ("delay caused by the defense weighs against the defendant" in speedy trial analysis). Although Carranza was arrested in Texas in June 2003 and was not extradited to California

until December 2003, he does not show any delay that was not occasioned by his efforts to resist extradition. See generally CT 148-149 (declaration of Texas attorney describing extradition resistance). Any delay during the period of less than six months that it took to get to trial in August 2004 after the filing of the felony information in February 2004 apparently was largely attributable to litigating his pretrial motions to dismiss, and in any event he waived about four months of that six months during the pretrial proceedings. See CT 346-348. Carranza is not entitled to the writ on his speedy trial claim.

C.   Due Process Claim For Pre-Indictment/Pre-Information Delay

Pre-indictment or pre-information delay may violate a criminal defendants' right to due process, but only if that delay actually prejudices his defense. While the statute of limitations is the primary protection against the prosecution of overly stale charges, the statute of limitations does not "fully define [defendants'] rights with respect to the events occurring prior to indictment." Marion, 404 U.S. at 324.  "Marion makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Lovasco, 431 U.S. at 790.  Although Lovasco and Marion indicate that something more than actual prejudice is necessary to establish a due process violation based on pre-indictment delay, the Supreme Court has not explained exactly what that extra something is. See, e.g., Hoo v. United States, 484 U.S. 1035, 1036 (1988) (White, J., dissenting from denial of petition for writ of certiorari) (stating that Court should have granted certiorari to decide correct test for determining if preindictment delay violates due process in light of split in the circuits as to role of prosecutorial motive in the test).

Carranza presents five reasons why the pre-information delay prejudiced him. His reasons fail to rise above the speculative level to affirmatively demonstrate that the delay actually prejudiced his ability to defend against the charges.

First, Carranza argues that Gustavo Marquez, the third shooting victim, was unavailable at trial. However, Carranza offers no indication as to how Marquez's testimony would have aided his defense if Marquez had been available. Carranza's argument

8

represents precisely the type of "[g]eneralized assertions of loss of memory, witnesses, or evidence" that are insufficient to establish actual prejudice. United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995). Absent a specific showing as to what Marquez would have said, the exculpatory value of his testimony is purely speculative. See United States v. Corona-Verbera, 509 F.3d 1105, 1113 (9th Cir. 2007) (claim of lost witness does not show actual prejudice if the defendant fails to make a specific showing as to what the lost witness would have said).

Second, he points to the unavailability of witness Claudio Martinez, who was deceased by the time of trial. Carranza offers no indication as to what the content of Martinez's testimony would have been if he had been alive to testify. Carranza merely presumes it would have aided in his defense, but that is not enough to demonstrate actual prejudice. See Manning, 56 F.3d at 1194.

Third, Carranza argues that the forensic pathologist who performed the autopsy on Rosemary was unavailable to testify. Although that pathologist was not available, a different forensic pathologist – who reviewed Rosemary's autopsy materials – did testify at trial. Resp. Ex. 5 at 8. Carranza offers no explanation how the absence of the former pathologist made any difference. The autopsy details were such that it was unlikely that it would have made any difference as to which pathologist testified: Rosemary had sustained a fatal "through-and-through gunshot wound" to her head that caused "extensive damage to the brain" and was "almost instantly fatal," as well as wounds to her right arm and chest/abdomen from a second gunshot that would have been fatal if the first shot was not, and a bone-shattering wound to her left arm from a third shot. RT 316, 320-23, 333. Carranza's mere assertion that the original pathologist's absence was prejudicial is insufficient to show actual prejudice.

Fourth, Carranza argues that victim Linda Gutierrez's blood alcohol level on the night of the shooting was unavailable. However, there is no evidence that a blood test had ever been performed on Linda Gutierrez. If the blood alcohol test had not been done, it would have made no difference at all if the trial had occurred in 1975 or 2004, or any point in

9

between. Even if the test was done, there is no reason to believe that her blood alcohol level was so high that she was unable to identify the shooter. Further, she was not the only witness who identified him as the shooter.

Finally, Carranza alleges that the passage of time rendered a mental defense nearly impossible. He fails to identify the mental defense that he could have presented and fails to show how the passage of time impaired it. Moreover, it is difficult to see how a mental defense would have had much strength in light of his testimony that he had not done the shooting. That is, his mental state did not matter unless he was the shooter, and he had denied being that person.

The California Court of Appeal used the same basic analysis to determine that there was insufficient actual prejudice on the state constitutional speedy trial claim, see Cal. Ct. App. Opinion at 8-9, but this court does not apply § 2254(d) to the actual reasoning of the state court because the California appellate court summarily rejected the federal due process claim. Instead, the court applies the test from Harrington to evaluate the unexplained denial to which § 2254(d)(1) applies. See Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011); see id. at 786 (confronted by summary denial, federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.") The state court of appeal reasonably could have concluded that none of Carranza's five reasons established that the delay in prosecution actually prejudiced his defense.

Carranza's failure to show actual prejudice is fatal to his due process claim. Of course, as mentioned earlier, the Supreme Court has indicated that the defendant must show actual prejudice plus something more, but since Carranza did not show actual prejudice, the state court of appeal reasonably could have stopped the analysis there and not ventured to decide what that something extra is that a criminal defendant must show to establish a due process violation based on pre-information delay. The Court of Appeal reasonably applied the federal standards for determining that Carranza's pre-information delay did not violate

10

his federal constitutional rights. Consequently, Carranza is not entitled to federal habeas relief.

A certificate of appealability will not issue. See 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: April 20, 2011

Marilyn Hall Patel
United States District Judge